**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

CELESTINO G. ALMEDA
111 Pembrooke View Lane
Gaithersburg, MD 20877

           Plaintiff,

      v.

UNITED STATES DEPARTMENT
OF EDUCATION
400 Maryland Avenue, SW
Washington, DC 20202,

and

UNITED STATES DEPARTMENT OF
VETERANS AFFAIRS
810 Vermont Avenue NW
Washington, DC 20420

           Defendants.

No. 1:17-cv-2641

## <u>COMPLAINT</u>

1.    This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701 <u>et seq.</u>, seeking the release of withheld records about the Filipino Veterans Equity Compensation Fund ("FVECF") and the FVECF Interagency Working Group ("IWG").

2.    Celestino G. Almeda ("Mr. Almeda"), who served in the Philippines during World War II as a guerrilla in the resistance movement against the Japanese occupation, is one hundred (100) years old and perhaps the oldest FOIA plaintiff in the fifty years of the law's existence.

3.      Mr. Almeda has been advocating for recognition of Filipino veterans of World War II since Congress infamously passed two Rescission Acts in 1946 that essentially rendered the Filipinos ineligible for United States veterans' benefits.  During a speech he delivered on October 25, 2017, following remarks by the Congressional leadership on the occasion of the Congressional Gold Medal Ceremony honoring the Filipino v.eterans of WWII, Mr. Almeda stated that "I will never quit" and "I will never leave a fallen comrade behind."[1]  Despite having recently prevailed in his dispute with the Department of Veterans Affairs ("VA") about his own eligibility for the FVECF benefit (after the FOIA requests at issue in this case had been submitted), Mr. Almeda continues to fight for the thousands of others who have not received the recognition they deserve.

4.      This action thus concerns withheld records related to the White House Initiative on Asian Americans and Pacific Islanders ("WHIAAPI"), which was established with its funding and administrative support provided by the United States Department of Education ("ED").   WHIAAPI, in collaboration with the Office of Management and Budget, launched the FVECF IWG, which convened from 2012-13, with VA as a member.  The withheld records potentially bear on the claims of literally thousands of Filipino veterans who have been denied the FVECF benefit by VA.

5.      Mr. Almeda seek declaratory, injunctive, and other appropriate relief with respect to ED's and VA's unlawful withholdings of records requested under FOIA.

---

[1] *See* https://www.youtube.com/watch?v=N8XFn2cixCM at 47:32–54:10 (YouTube posting by Speaker of the House Paul Ryan with video recording of Mr. Almeda's remarks).

## JURISDICTION AND VENUE

6.     This court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 5 U.S.C. § 552(a)(4)(B).  In addition, this Court has jurisdiction pursuant to the APA, 5 U.S.C. §§ 701-706.  This Court has jurisdiction to grant declaratory and further necessary or proper relief pursuant to 28 U.S.C. §§ 2201-2202 and Federal Rules of Civil Procedure 57 and 65.

7.     Venue lies in this district pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e) because the defendant is located in the District of Columbia and a substantial part of the events or omissions giving rise to the claims occurred in this district.

## THE PARTIES

8.     Plaintiff Celestino G. Almeda is an individual residing at 111 Pembrooke View Lane, Gaithersburg, Maryland 20877.

9.     Defendant United States Department of Education is a federal agency located at 400 Maryland Avenue, SW, Washington, DC 20202.  ED has possession, custody, and control over records sought by plaintiff.  ED is an agency within the meaning of 5 U.S.C. § 552(f)(1).  ED holds a leadership role on various Commissions that the President appoints "to advise him on matters of national importance."[2]

10.     Defendant United States Department of Veterans Affairs is a federal agency headquartered at 810 Vermont Avenue NW, Washington, DC 20420.  VA has possession, custody, and control over records sought by plaintiff.  VA is an agency within the meaning of 5 U.S.C. § 552(f)(1).  VA's "vision" is "[t]o provide veterans the world-class

---

[2] *See, e.g.,* https://www2.ed.gov/about/inits/list/index.html.

benefits and services they have earned - and to do so by adhering to the highest standards of compassion, commitment, excellence, professionalism, integrity, accountability, and stewardship."[3]

## NATURE OF THE ACTION

11.     Just prior to the turn of the twentieth century, the United States acquired the Philippines from Spain when the so-called Treaty of Paris was ratified to end the Spanish-American War. *See* "Treaty of Peace between the United States of America and the Kingdom of Spain," in Foreign Treaties and International Agreements; Spain, 30 Stat. 1754 (Dec. 10, 1898).   The Commonwealth of the Philippines was subsequently established in 1934 when Congress enacted the Philippine Independence Act, which in part provided that until "final and complete withdrawal of the sovereignty of the United States . . . [t]he Philippine Islands recognize[d] the right of the United States . . . to maintain . . . armed forces in the Philippines, and, upon order of the President, to call into the service of such armed forces all military forces organized by the Philippine government." 48 Stat. 456 (Mar. 24, 1934).

12.     During World War II, President Franklin D. Roosevelt "call[ed] and order[ed] into the service of the armed forces of the United States for the period of the existing emergency and place[d] under the command of a General Officer, United States Army . . . all of the organized military [except naval] forces of the Government of the Commonwealth of the Philippines."   Military Order of July 26, 1941, 6 Fed. Reg. 3825 (Aug. 1, 1941).

---

[3] *See* https://www.va.gov/about_va/.

13.     Pursuant to that Military Order, the U.S. Army Forces in the Far East ("USAFFE") was created on July 26, 1941 with Major General Douglas MacArthur in command.  Gen. MacArthur subsequently became the Commander-in-Chief of the Southwest Pacific Area ("CINCSWPA"), a military command of the Allied forces in a theatre that included the Philippines.

14.     To oppose the Japanese invaders, Filipinos created a resistance movement and became known as "guerrillas."  Their service was so critical to the Allied efforts—especially during the reconquest of the Philippines from Japan—that their leaders exercised authority under direct command of Gen. MacArthur.

15.     On October 28, 1944, Philippine President Osmeña issued Executive Order No. 21 designating "[a]ll persons . . . who are actively serving in recognized military forces in the Philippines . . . to be on active service in the Philippine Army."  *See* Executive Order No. 21 by the President of the Philippines (Oct. 28, 1944), *available at* https://www.gov.ph/documents/20147/190423/Executive+Order+No.+21%2C+s.+1944/08f96938-5878-f9ee-f8a8-41e0ca566adf?version=1.1.  A "recognized military force" was defined as "a force under a commander who ha[d] been appointed, designated or recognized by [CINCSWPA]."  *Id.*  In other words, all guerrilla units recognized by CINCSWPA were also incorporated into the Philippine Army.

16.     With WWII having come to a close and the United States imminently relinquishing its sovereignty over the Philippines, President Harry S. Truman issued a Military Order, effective June 30, 1946, in which he "release[d] from the service of the armed forces of the United States all of the organized military forces of the Government

of the Commonwealth of the Philippines called and ordered into the service of the armed forces of the United States pursuant to the Military Order of July 26, 1941." Military Order filed July 1, 1946, 11 Fed. Reg. 7394 (July 3, 1946); *see also* "Treaty between the United States of America and the Philippines and protocol respecting general relations," in Foreign Treaties and International Agreements; Philippines, 61 Stat. 1174 (July 4, 1946).

17.     Following the war, the United States Army sought to document "the guerrilla resistance movement in the Philippines" and undertook a "mission . . . to award those valiant members of this fraternity who contributed materially to the defeat of the common foe, official guerrilla recognition.   This recognition [was] tantamount to induction into the Philippine Army which during the late war was in the service of the Armed Forces of the United States, thus establishing [the Filipinos] entitlement to soldier emoluments and veterans benefits." *See* **Exhibit 1** at Foreward.[4]

18.     Unfortunately, recognition of guerrillas "was constantly hindered [] [] by chaotic conditions incident to a total war . . . Under the most favorable reception the granting of guerrilla recognition to deserving Filipinos would have been extremely difficult to accomplish and hold the degree of error and injustice to an absolute nuance." *Id.* at 214.  But, quite simply, "it was impossible to exclude error in recognitions."  *Id.* at 215.  Claims for guerrilla recognition were complicated in part by "chaotic personnel problems experienced by an army undergoing the process of rapid demobilization" and in

---

[4] The document reproduced in **Exhibit 1**, U.S. ARMY RECOGNITION PROGRAM OF PHILIPPINE GUERRILLAS, dated *circa* 1949, is only provided in relevant part.  A complete copy can be obtained from https://catalog.archives.gov/id/6921767.

part because original rosters of guerrillas, which had been submitted to GHQ SWPA, were "destroyed" or "lost in storage."  *Id.* at Foreward, 108-09.

19.     As it turned out, guerrilla "recognition" by the U.S. Army had very limited practical meaning.  Despite the requirement of the Philippine Independence Act that— during the time frame that included World War II—"[a]ll citizens of the Philippine Islands shall owe allegiance to the United States," *see* Pub. L. No. 73-127, 48 Stat. 456 (Mar. 24, 1934), most veterans' benefits were later denied to those Filipinos who served on behalf of the United States during World War II.  Indeed, a first Rescission Act in 1946 stated that "service . . . pursuant to the military order of the President of the United States dated July 26, 1941, shall not be deemed to be or to have been service in the military or naval forces of the United States or any component thereof for the purposes of any law of the United States conferring rights, privileges, or benefits upon any person by reason of the service of such person."   Pub. L. No. 79–301, 60 Stat. 6 (Feb. 18, 1946); *see also* Pub. L. No. 79–391, 60 Stat. 221 (May 27, 1946) (a second Rescission Act in 1946).

20.     Over sixty years after the Rescission Acts of 1946, the FVECF benefit was established by Congress in the Recovery Act, Pub. L. No. 111-5, § 1002, 123 Stat. 115, 200 (2009), with the potential to temper the long-standing sentiment among many Philippine veterans that their efforts on behalf of the United States were unappreciated. Non-U.S. citizens and U.S. citizens who are "eligible" as defined in the Act are entitled to one-time payments of $9,000 and $15,000, respectively.  *Id.* at § 1002(e).  An "eligible person" is defined, *inter alia*, as "any person who . . . served . . . before July 1, 1946, in

the organized military forces of the Government of the Commonwealth of the Philippines, while such forces were in the service of the Armed Forces of the United States pursuant to the military order of the President dated July 26, 1941, including among such military forces organized guerrilla forces under commanders appointed, designated, or subsequently recognized by [CINCSWPA]." *Id.* at § 1002(d)(1)(A).

21.     Regrettably, VA has *denied* 23,775 FVECF claims (56%) while approving only 18,980 claims (44%). *See WWII Filipino Veterans Equity Compensation (FVEC) Fund, Center for Minority Veterans (CMV)*, available at https://www.va.gov/centerfor minorityveterans/fvec.asp (last reviewed Dec. 7, 2017) (statistics as of Oct. 1, 2017). According to VA testimony before Congress several years ago, 9,800 FVECF claims had been denied because, in VA's interpretation of the statutory eligibility requirements, the claimants allegedly "had no valid military service."[5]

22.     Many Filipino veterans have believed that their FVECF claims were improperly denied by VA.  In 2012,

> [t]o address their concerns, the White House Initiative on Asian Americans and Pacific Islanders, in collaboration with the Office of Management and Budget, [] launched an Interagency Working Group [("IWG")] comprised of officials from the Department of Veterans Affairs, the Department of Defense, and the National Archives and Record Administration.  The Interagency Working Group [was] tasked with analyzing the process faced by these Filipino veterans in demonstrating eligibility for compensation in order to ensure that all applications receive thorough and fair

---

[5] *See* FILIPINO VETERANS EQUITY COMPENSATION FUND: INQUIRY INTO THE ADEQUACY OF PROCESS IN VERIFYING ELIGIBILITY, Hearing Before the Subcommittee on Disability Assistance and Memorial Affairs of the Committee on Veterans' Affairs, House of Representatives (Nov. 20, 2014), at 11-12, available at https://www.gpo.gov/fdsys/pkg/CHRG-113hhrg96136/pdf/CHRG-113hhrg96136.pdf.

> review.   This [was] part of the Obama Administration's
> ongoing efforts to honor the contributions of all veterans in
> their service to our country.

*See*  https://obamawhitehouse.archives.gov/blog/2012/10/17/honoring-filipino-world-war-ii-veterans-their-service.

23.     Pursuant to Executive Order 13515 (Oct. 14, 2009), the White House Initiative on Asian Americans and Pacific Islanders was established with its funding and administrative support provided by ED.  *See, e.g.,*  https://obamawhitehouse.archives.gov/the-press-office/executive-order-asian-american-and-pacific-islander-community.   Along with the Office of Management and Budget, WHIAAPI launched the IWG which also was comprised of officials from VA, the Department of Defense, and the National Archives and Record Administration.

24.     Details about the IWG are difficult to locate.   Meeting minutes, for example, are not readily available to the public.  Yet details concerning the IWG's work are important to the tens of thousands of other FVECF claimants who have been denied eligibility for this benefit by the VA.

25.     The public is owed full and frank disclosure by ED and VA concerning the work of the IWG.

## PLAINTIFF'S FIRST FOIA REQUEST AND ED'S FAILURE TO COMPLY WITH FOIA

26.     By email and facsimile dated October 16, 2017, Mr. Almeda submitted a FOIA request ("First FOIA Request") to ED requesting:

> all Records in the possession, custody, or control of the
> **Department of Education** and/or the **White House**

**Initiative on Asian Americans and Pacific Islanders** that concern, relate to, or reflect:

> **(a)** communications, including but not limited to substantive comments, concerns, and/or edits to drafts and/or approvals on agency letterhead (e.g., by VA), concerning the blog post placed online on or about July 9, 2013 at http://www.whitehouse.gov/blog/2013/07/09/recognizing-extraordinary-contribution-filipino-veterans (now available at https://obamawhitehouse.archives.gov/blog/2013/07/09/recognizing-extraordinary-contribution-filipino-veterans), as referenced for example in [an attached exhibit] (email chain from 06/13/2013-07/09/2013 re Filipino Vets Blog Post and Report ([with] yellow highlighting added);
>
> **(b)** any sampling or pilot group of denied FVEC claimants (including but not limited to Celestino G. Almeda), considered by WHIAAPI, the FVEC IWG, the Department of Veterans Affairs (VA), and/or NARA during 2012-13;
>
> **(c)** communications involving WHIAAPI during 2012-13 with any individual at the Department of Veterans Affairs (VA) concerning FVEC;
>
> **(d)** the meeting between VA Secretary Shinseki and WHIAAPI on or about May 10, 2013 concerning FVEC; and
>
> **(e)** the names of the individuals who attended each meeting of the FVEC IWG, whether such meeting occurred in person, telephonically, or otherwise.

*See* **Exhibits 2, 3** (emphasis in original).[6]

27.     The First FOIA Request further stated:

> It is believed that the following individuals at the Department of Education **may provide information helpful to the**

---

[6] The October 16, 2017 email to ED also included a separate request under the Privacy Act.  However, the Privacy Act request is not presently being raised in this action.

> ***Department's FOIA officials in identifying relevant
> Records***: Diana Yu (Diana.yu@ed.gov); Akil Vohra (akil.
> vohra@ed.gov); and/or Rebecca Lee (rebecca.lee@ed.gov).
> It is believed that the following email accounts of individuals
> previously at the Department of Education / WHIAAPI also
> ***may contain relevant information***: Jude R. Soundar
> (jude.soundar@ed.gov); Jason Tengco (Jason.Tengco@ed.
> gov); Phillip Olaya (Phillip.Olaya@edu.gov); Audrey
> Buehring; and Chris Lu.

*Id.* (emphasis added).[7]

28.     The First FOIA Request sought expedited processing and a waiver of fees.

*Id.*

29.     By email and letter dated October 19, 2017, ED acknowledged receipt of

the First FOIA Request and assigned it tracking No. 18-00003-F-PA.  *See* **Exhibit 4**.  The

letter states "[p]lease refer to the FOIA tracking number to check the status of your FOIA

request at . . . http://www2.ed.gov/policy/gen/leg/foia/foiatoc.html."  *Id.*  From that web

page is a link to ED's FOIA Request Status Log "as of 10/25/17."  The Log includes a

list of requests that have been open since 2011, including the First FOIA Request.

*See* **Exhibit 5** at 24.

30.     By email to ED dated November 8, 2017, Mr. Almeda withdrew one of the

grounds ("[r]easonable expectation of an imminent loss of a substantial due process

right") on which he requested expedited processing of the First FOIA Request, but

maintained his request for expedited processing "because his request concerns a 'matter

---

[7]  Other individuals previously at WHIAAPI/ED whose email accounts, on
information and belief, may contain responsive Records include but are not limited to
Jude R. Soundar (Jude.Soundar@ed.gov), Jason Tengco (Jason.Tengco@ed.gov), Phillip
Olaya (Phillip.Olaya@ed.gov), Kiran Ahuja (formerly Executive Director of WHIAAPI),
Audrey Buehring, (formerly Deputy Director of WHIAAPI), and Chris Lu (formerly Co-
Chair of WHIAAPI).

of widespread and exceptional media interest in which there exist possible questions that affect public confidence in the Government's integrity.'"  *See* **Exhibit 6**.

31.    ED has not provided any response determination to Mr. Almeda in connection with the First FOIA Request.

32.    ED has not made responsive, non-exempt records promptly available to Mr. Almeda in connection with the First FOIA Request.

## PLAINTIFF'S SECOND FOIA REQUEST AND VA'S FAILURE TO COMPLY WITH FOIA

33.    By email dated October 16, 2017, Mr. Almeda submitted a FOIA request ("Second FOIA Request") to VA's Office of General Counsel ("OGC") requesting:

> all Records of **Richard Hipolit (SES) or Jill Kupec (VBAVACO)** in the possession, custody, or control of the **Department of Veterans Affairs** that in any way relate to, concern, mention, describe, report, or discuss:
>
> > **(a)** communications—including but not limited to substantive comments, concerns, and/or edits to drafts and/or approvals on agency letterhead (e.g., by VA)—with respect to the preparation of a blog post by the FVEC IWG that ultimately was placed online on or about July 9, 2013 at http://www.whitehouse.gov/blog/2013/07/09/recognizing-extraordinary-contribution-filipino-veterans (now available at https://obamawhitehouse.archives.gov/blog/2013/07/09/recognizing-extraordinary-contribution-filipino-veterans), as referenced for example in [an attached exhibit] (email chain from 06/13/2013-07/09/2013 re Filipino Vets Blog Post and Report (yellow highlighting added);
>
> > **(b)** any sampling or pilot group of denied FVEC claimants (including but not limited to Celestino G. Almeda), considered by WHIAAPI and/or the FVEC IWG (including but not limited to VA) during 2012-13;

**(c)** the meeting between VA Secretary Shinseki and WHIAAPI on or about May 10, 2013 concerning FVEC;

**(d)** the names of all individuals who participated on the FVEC IWG on behalf of VA; and

**(e)** communications from 2012-13 that in any way reference, refer to, or relate to the report **U.S. Army Recognition Program of Philippine Guerrillas**, dated *circa* 1949.

*See* **Exhibit 7**.[8]

34.     The Second FOIA Request sought expedited processing and a waiver of fees. *Id.*

35.     The Second FOIA Request further stated:

It is believed that the most relevant time frame of requested Records is 2012-13.

It is believed that the email accounts of the following document custodians at VA likely contain relevant information:

- Richard Hipolit (SES) (Richard.Hipolit@va.gov) -- he was an individual who participated on the FVEC IWG on behalf of VA and is believed to have been Assistant General Counsel, Professional Staff Group II, Office of the General Counsel at the time;

- Jill Kupec (VBAVACO) (Jill.Kupec@va.gov) -- she was an individual who participated on the FVEC IWG on behalf of VA, and is believed to have been the Executive Management Officer for the Office of Field Operations of the Veterans Benefits Administration at the time.

*Id.*

---

[8] The October 16, 2017 email to VA's OGC also included a separate request under the Privacy Act. However, the Privacy Act request is not presently being raised in this action.

36.     By email dated October 17, 2017, Mr. Almeda amended the Second FOIA

Request to request "all Records of Richard Hipolit (SES) or Jill Kupec (VBAVACO) **or**

**Terri Beer** . . ." and to further state:

> • Terri Beer (terri.beer@va.gov) -- she was an individual
>   who participated on the FVEC IWG on behalf of VA,
>   and is believed to have been with the Veterans
>   Benefits Administration at the time.

*See* **Exhibit 8** (emphasis added).

37.     By email and letter dated October 19, 2017, VA acknowledged receipt of

the Second FOIA Request, as amended, assigned it tracking number 18-00643-F, and

granted Mr. Almeda's request for expedited processing.  *See* **Exhibit 9**.

38.     By email to VA's OGC dated November 8, 2017, Mr. Almeda withdrew

one of the grounds ("[r]easonable expectation of an imminent loss of a substantial due

process right") on which he requested expedited processing of the First FOIA Request,

but maintained his request for expedited processing "because his request concerns a

'matter of widespread and exceptional media interest in which there exist possible

questions that affect public confidence in the Government's integrity.'"  *See* **Exhibit 10**.

39.     VA has not provided any response determination to Mr. Almeda in

connection with the Second FOIA Request.

40.     VA has not made responsive, non-exempt records promptly available to

Mr. Almeda in connection with the Second FOIA Request.

### PLAINTIFF'S THIRD FOIA REQUEST AND
### VA'S FAILURE TO COMPLY WITH FOIA

41.     By email dated October 16, 2017, Mr. Almeda submitted a FOIA request

("Third FOIA Request") to VA's Veterans Benefits Administration ("VBA") requesting:

> all Records of **Richard Hipolit (SES) or Jill Kupec
> (VBAVACO)** in the possession, custody, or control of the
> **Department of Veterans Affairs** that in any way relate to,
> concern, mention, describe, report, or discuss:
>
> > **(a)** communications—including but not limited to
> > substantive comments, concerns, and/or edits to drafts
> > and/or approvals on agency letterhead (e.g., by VA)—
> > with respect to the preparation of a blog post by the
> > FVEC IWG that ultimately was placed online on or
> > about July 9, 2013 at http://www.whitehouse.gov/blog/
> > 2013/07/09/recognizing-extraordinary-contribution-fili
> > pino-veterans (now available at https://obamawhite
> > house.archives.gov/blog/2013/07/09/recognizing-extra
> > ordinary-contribution-filipino-veterans), as referenced
> > for example in [an attached exhibit] (email chain from
> > 06/13/2013-07/09/2013 re Filipino Vets Blog Post and
> > Report (yellow highlighting added);
> >
> > **(b)** any sampling or pilot group of denied FVEC
> > claimants (including but not limited to Celestino G.
> > Almeda), considered by WHIAAPI and/or the FVEC
> > IWG (including but not limited to VA) during 2012-
> > 13;
> >
> > **(c)** the meeting between VA Secretary Shinseki and
> > WHIAAPI on or about May 10, 2013 concerning
> > FVEC;
> >
> > **(d)** the names of all individuals who participated on
> > the FVEC IWG on behalf of VA; and
> >
> > **(e)** communications from 2012-13 that in any way
> > reference, refer to, or relate to the report **U.S. Army
> > Recognition Program of Philippine Guerrillas**,
> > dated *circa* 1949.

*See* **Exhibit 11**.[9]

42.     The Third FOIA Request sought expedited processing and a waiver of fees.

*Id.*

43.     The Third FOIA Request further stated:

It is believed that the most relevant time frame of requested Records is 2012-13.

It is believed that the email accounts of the following document custodians at VA likely contain relevant information:

- Richard Hipolit (SES) ([Richard.Hipolit@va.gov](mailto:Richard.Hipolit@va.gov)) -- he was an individual who participated on the FVEC IWG on behalf of VA and is believed to have been Assistant General Counsel, Professional Staff Group II, Office of the General Counsel at the time;

- Jill Kupec (VBAVACO) ([Jill.Kupec@va.gov](mailto:Jill.Kupec@va.gov)) -- she was an individual who participated on the FVEC IWG on behalf of VA, and is believed to have been the Executive Management Officer for the Office of Field Operations of the Veterans Benefits Administration at the time.

*Id.*

44.     By email dated October 17, 2017, Mr. Almeda amended the Third FOIA Request to request "all Records of Richard Hipolit (SES) or Jill Kupec (VBAVACO) **or Terri Beer** . . ." and to further state:

- Terri Beer ([terri.beer@va.gov](mailto:terri.beer@va.gov)) -- she was an individual who participated on the FVEC IWG on behalf of VA,

---

[9] The October 16, 2017 email to VA's VBA also included a separate request under the Privacy Act.  By letter dated October 25, 2017, the VA Records Management Center—part of VBA—provided a "response to [Mr. Almeda's] Privacy Act request dated October 16, 2017."  *See* **Exhibit 12**.  That Privacy Act response has been administratively appealed and is not presently being raised in this action.

and is believed to have been with the Veterans
Benefits Administration at the time.

*See* **Exhibit 13** (emphasis added).

45.     VA has not acknowledged receipt of the Third FOIA Request.

46.     VA has not provided any response determination to Mr. Almeda in
connection with the Third FOIA Request.

47.     VA has not made responsive, non-exempt records promptly available to
Mr. Almeda in connection with the Third FOIA Request.

**FAILURE TO TIMELY MAKE A RESPONSE DETERMINATION
AND/OR MAKE RECORDS "PROMPTLY AVAILABLE" UNDER *CREW***

48.     "[I]n order to make a 'determination' and thereby trigger the administrative
exhaustion requirement, the agency must at least: (i) gather and review the documents;
(ii) determine and communicate the scope of the documents it intends to produce and
withhold, and the reasons for withholding any documents; and (iii) inform the requester
that it can appeal whatever portion of the 'determination' is adverse." *Citizens for
Responsibility & Ethics in Wash. [CREW] v. FEC*, 711 F.3d 180, 188 (D.C. Cir. 2013).

49.     "If the agency does not make a 'determination' within the relevant statutory
time period, the requester may file suit without exhausting administrative appeal
remedies." *Id.* at 185.

50.     The FOIA statute, 5 U.S.C. § 552(a)(6)(C)(i), also provides that "[a]ny
person making a request to any agency for records . . . shall be deemed to have exhausted
his administrative remedies with respect to such request if the agency fails to comply
with the applicable time limit provisions of § 552(a)(6)."

- 17 -

51.     ED has not provided any response "determination" in connection with the First FOIA Request within the relevant statutory time period.

52.     VA has not provided any response "determination" in connection with the Second FOIA Request or the Third FOIA Request within the relevant statutory time period.

53.     "FOIA requires that the agency make the records 'promptly available,' which depending on the circumstances typically would mean within days or a few weeks of a 'determination,' not months or years." *CREW*, 711 F.3d at 188.

54.     ED has not made responsive, non-exempt records promptly available in connection with the First FOIA Request.

55.     VA has not made responsive, non-exempt records promptly available in connection with the Second FOIA Request or the Third FOIA Request.

### FIRST CAUSE OF ACTION:
**Unlawful Failure to Disclose Agency Records
With Respect to the First FOIA Request**

56.     Mr. Almeda repeats and re-alleges paragraphs 1-55 above.

57.     Mr. Almeda has a legal right under FOIA to obtain the agency records requested from defendant ED in the First FOIA Request, and no legal basis exists for defendant's failure to make available the requested records.

58.     With respect to the First FOIA Request, defendant ED's (i) failure to exercise due diligence with respect to searching for responsive records and making the requested records promptly available and (ii) wrongful withholding of agency records are

unlawful, and in violation of FOIA, including 5 U.S.C. § 552(a)(3), as well as ED's regulations promulgated under FOIA.

59.     Mr. Almeda is entitled to declaratory and injunctive relief with respect to the release and disclosure of the requested records.

### SECOND CAUSE OF ACTION:
### Violation of the Administrative Procedure Act for
### Failure to Conduct Proper Search and Wrongful Withholding
### of Records With Respect to the First FOIA Request

60.     Mr. Almeda repeats and re-alleges paragraphs 1-59 above.

61.     Defendant ED's (i) failure to exercise due diligence with respect to searching for responsive records and making the requested records promptly available and (ii) wrongful withholding of agency records each constitute agency action unlawfully withheld and unreasonably delayed, in violation of the APA, 5 U.S.C. §§ 701-06.  ED's failure to search, and its withholdings, with respect to the First FOIA Request each are arbitrary, capricious, an abuse of discretion, not in accordance with law and without observance of procedure required by law, all in violation of the APA.

62.     Mr. Almeda is entitled to declaratory and injunctive relief with respect to the release and disclosure of the requested records in connection with the First FOIA Request.

### THIRD CAUSE OF ACTION:
### Unlawful Failure to Disclose Agency Records
### With Respect to the Second FOIA Request

63.     Mr. Almeda repeats and re-alleges paragraphs 1-62 above.

64.     Mr. Almeda has a legal right under FOIA to obtain the agency records requested from defendant VA in the Second FOIA Request, and no legal basis exists for defendant's failure to make available the requested records.

65.     With respect to the Second FOIA Request, defendant VA's (i) failure to exercise due diligence with respect to searching for responsive records and making the requested records promptly available and (ii) wrongful withholding of agency records are unlawful, and in violation of FOIA, including 5 U.S.C. § 552(a)(3), as well as VA's regulations promulgated under FOIA.

66.     Mr. Almeda is entitled to declaratory and injunctive relief with respect to the release and disclosure of the requested records.

**FOURTH CAUSE OF ACTION:**
**Violation of the Administrative Procedure Act for**
**Failure to Conduct Proper Search and Wrongful Withholding**
**of Records With Respect to the Second FOIA Request**

67.     Mr. Almeda repeats and re-alleges paragraphs 1-66 above.

68.     Defendant VA's (i) failure to exercise due diligence with respect to searching for responsive records and making the requested records promptly available and (ii) wrongful withholding of agency records each constitute agency action unlawfully withheld and unreasonably delayed, in violation of the APA, 5 U.S.C. §§ 701-06.  VA's failure to search, and its withholdings, with respect to the Second FOIA Request each are arbitrary, capricious, an abuse of discretion, not in accordance with law and without observance of procedure required by law, all in violation of the APA.

69.    Mr. Almeda is entitled to declaratory and injunctive relief with respect to the release and disclosure of the requested records in connection with the Second FOIA Request.

### FIFTH CAUSE OF ACTION:
**Unlawful Failure to Disclose Agency Records
With Respect to the Third FOIA Request**

70.    Mr. Almeda repeats and re-alleges paragraphs 1-69 above.

71.    Mr. Almeda has a legal right under FOIA to obtain the agency records requested from defendant VA in the Third FOIA Request, and no legal basis exists for defendant's failure to make available the requested records.

72.    With respect to the Third FOIA Request, defendant VA's (i) failure to exercise due diligence with respect to searching for responsive records and making the requested records promptly available and (ii) wrongful withholding of agency records are unlawful, and in violation of FOIA, including 5 U.S.C. § 552(a)(3), as well as VA's regulations promulgated under FOIA.

73.    Mr. Almeda is entitled to declaratory and injunctive relief with respect to the release and disclosure of the requested records.

### SIXTH CAUSE OF ACTION:
**Violation of the Administrative Procedure Act for
Failure to Conduct Proper Search and Wrongful Withholding
of Records With Respect to the Third FOIA Request**

74.    Mr. Almeda repeats and re-alleges paragraphs 1-73 above.

75.    Defendant VA's (i) failure to exercise due diligence with respect to searching for responsive records and making the requested records promptly available and (ii) wrongful withholding of agency records each constitute agency action unlawfully

withheld and unreasonably delayed, in violation of the APA, 5 U.S.C. §§ 701-06. VA's failure to search, and its withholdings, with respect to the Third FOIA Request each are arbitrary, capricious, an abuse of discretion, not in accordance with law and without observance of procedure required by law, all in violation of the APA.

76.     Mr. Almeda is entitled to declaratory and injunctive relief with respect to the release and disclosure of the requested records in connection with the Third FOIA Request.

## REQUESTS FOR RELIEF

WHEREFORE, Mr. Almeda requests that judgment be entered in his favor and against defendant, and that:

a) defendants and any of defendants' agents or other persons, offices, or components acting for, with, by, through or under them be ordered to promptly conduct an expedited and reasonable search for records responsive to Mr. Almeda's requests under FOIA;

b) defendants and any of defendants' agents or other persons, offices, or components acting for, with, by, through or under them be enjoined and restrained from continuing to fail to promptly conduct reasonable searches and from withholding records relevant to Mr. Almeda's requests under FOIA and in violation of the APA;

c) the Court declare that the requested records are not exempt from disclosure under FOIA and order defendants to disclose the requested records in their entireties and make copies available to Mr. Almeda;

d) the Court enter a judgment awarding Mr. Almeda reasonable attorneys' fees and costs pursuant to 5 U.S.C. § 552(a)(4)(E) and 28 U.S.C. § 2412; and

e) the Court award all other such relief to Mr. Almeda as this Court deems just, proper and equitable.

Dated:  December 8, 2017          Respectfully submitted,

/s/ Seth A. Watkins
Seth A. Watkins (D.C. Bar # 467470)
      Email:  watkins@wlapllc.com
WATKINS LAW & ADVOCACY, PLLC
1455 Pennsylvania Avenue NW, Suite 400
Washington, DC 20004
Telephone: (202) 355-9421
Facsimile: (202) 355-9424

*Attorney for Celestino G. Almeda*