UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CELESTINO G. ALMEDA,

*Plaintiff*,

v.

UNITED STATES DEPARTMENT
OF EDUCATION, *et al.*,

*Defendants*.

Civil Action No. 17-2641-TSC

**MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

JESSIE K. LIU
*United States Attorney*

DANIEL F. VAN HORN
*Chief, Civil Division*

JOHNNY H. WALKER
*Assistant United States Attorney*

United States Attorney's Office
555 4th Street, N.W.
Washington, District of Columbia 20530
Telephone: 202 252 2575
johnny.walker@usdoj.gov

Dated: June 26, 2019                    *Counsel for Defendants*

# CONTENTS

*Table of Authorities*..................................................................................................ii

INTRODUCTION ......................................................................................................1

BACKGROUND ........................................................................................................1

STANDARD................................................................................................................4

ARGUMENT ..............................................................................................................5

I.       The VA Conducted an Appropriate Search for Hipolit's Records  ...................6

II.      The VA and ED Withheld Only Exempt Information  ......................................7

         A.       The Agencies Properly Withheld Information under Exemption 5 .......7

                  1.       The Deliberative Process Privilege  ........................................8

                  2.       The Attorney-Client Privilege ................................................9

                  3.       The Work-Product Doctrine  ................................................10

         B.       The Agencies Properly Withheld Information under Exemption 6 ......11

III.     Defendants Released All Reasonably Segregable Information  .......................13

CONCLUSION..........................................................................................................14

# AUTHORITIES

Page(s)

**Cases**

*Am. Immigration Council v. Dep't of Homeland Sec.,*
21 F. Supp. 3d 60 (D.D.C. 2014) ................................................................................. 10, 11

*Am. Immigration Lawyers Ass'n v. Exec. Office for Immigration Review,*
("AILA"), 830 F.3d 667 (D.C. Cir. 2016) ................................................................................. 12

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242 (1986) ................................................................................. 4

*Armstrong v. Exec. Office of the President,*
97 F.3d 575 (D.C. Cir. 1996) ................................................................................. 13

*Brayton v. Office of U.S. Trade,*
*Rep.,* 641 F.3d 521 (D.C. Cir. 2011) ................................................................................. 4

*Canning v. Dep't of Justice,*
567 F. Supp. 2d 104 (D.D.C. 2008) ................................................................................. 13

*Celotex Corp. v. Catrett,*
477 U.S. 317 (1986) ................................................................................. 4

*Coastal States Gas Corp. v. Dep't of Energy,*
617 F.2d 854 (D.C. Cir. 1980) ................................................................................. 8, 9, 10

*Consumers' Checkbook Ctr. for the Study of Servs. v. HHS,*
554 F.3d 1046 (D.C. Cir. 2009) ................................................................................. 13

*Defenders of Wildlife v. U.S. Border Patrol,*
623 F. Supp. 2d 83 (D.D.C. 2009) ................................................................................. 4

*Dep't of Interior v. Klamath Water Users Protective Ass'n,*
532 U.S. 1 (2001) ................................................................................. 8, 10

*DOJ v. Reporters Comm. for Freedom of Press,*
489 U.S. 749 (1989) ................................................................................. 12

*Ground Saucer Watch, Inc. v. CIA,*
692 F.2d 770 (D.C. Cir. 1981) ................................................................................. 5

*In re Lindsey,*
148 F.3d 1100 (D.C. Cir. 1998) ................................................................................. 10

*In re Sealed Case*,
    737 F.2d 94 (D.C. Cir. 1984) ................................................................................. 10

*Judicial Watch, Inc. v. DOJ*,
    432 F.3d 366 (D.C. Cir. 2005) .............................................................................. 11

*Larson v. Dep't of State*,
    565 F.3d 857 (D.C. Cir. 2009) ................................................................................ 5

*Lepelletier v. Fed. Deposit Ins. Corp.*,
    164 F.3d 37 (D.C. Cir. 1999) ................................................................................ 11

*Loving v. Dep't of Defense*,
    550 F.3d 32 (D.C. Cir. 2008) .................................................................................. 8

*Mapother v. Dep't of Justice*,
    3 F.3d 1533 (D.C. Cir. 1993) .................................................................................. 8

*McGehee v. C.I.A.*,
    697 F.2d 1095 (D.C. Cir. 1983) .............................................................................. 5

*Mead Data Cent., Inc. v. U.S. Dep't of Air Force*,
    566 F.2d 242 (D.C. Cir. 1977) ................................................................... 9, 10, 13

*Media Research Ctr. v. U.S. Dep't of Justice*,
    818 F. Supp. 2d 131 (D.D.C. 2011) ...................................................................... 4, 5

*Military Audit Project v. Casey*,
    656 F.2d 724 (D.C. Cir. 1981) ................................................................................ 5

*Multi Ag Media LLC v. Dep't of Agric.*,
    515 F.3d 1224 (D.C. Cir. 2008) ............................................................................ 12

*Nat'l Ass'n of Home Builders v. Norton*,
    309 F.3d 26 (D.C. Cir. 2002) ................................................................................ 12

*Nat'l Ass'n of Retired Fed. Employees v. Horner*,
    879 F.2d 873 (D.C. Cir. 1989) .............................................................................. 12

*NLRB v. Sears, Roebuck & Co.*,
    421 U.S. 132 (1975) ................................................................................................ 8

*Perry v. Block*,
    684 F.2d 121 (D.C. Cir. 1982) ................................................................................ 5

*Roseberry-Andrews v. Dep't of Homeland Sec.*,
    299 F. Supp. 3d 9 (D.D.C. 2018) .......................................................................... 13

iii

*SafeCard Servs., Inc. v. S.E.C.*,
   926 F.2d 1197 (D.C. Cir. 1991) ................................................................. 5

*Sussman v. U.S. Marshals Serv.*,
   494 F.3d 1106 (D.C. Cir. 2007) ............................................................... 14

*Tax Analysts v. IRS*,
   117 F.3d 607 (D.C. Cir. 1997) ...................................................... 8, 10, 11

*U.S. Dep't of State v. Ray*,
   502 U.S. 164 (1991) ................................................................................. 12

*U.S. Dep't of State v. Washington Post Co.*,
   456 U.S. 595 (1982) ................................................................................. 11

*Washington  v. U.S. Dep't of Labor*,
   478 F. Supp. 2d 77 (D.D.C. 2007) ............................................................ 5

**Statutes**

5 U.S.C. § 552(b) ...................................................................................... 13

5 U.S.C. § 552(b)(5) ................................................................................... 7

5 U.S.C. § 552(b)(6) ............................................................................ 11, 12

## INTRODUCTION

Plaintiff Celestino Almeda brought this suit claiming that Defendants the Department of Education ("ED") and the Department of Veterans Affairs ("VA") had not responded to his requests for records under the Freedom of Information Act ("FOIA"). Defendants have now produced those records and, through dialogue and good-faith efforts at resolution, the parties have narrowed this case to only the following issues: (1) whether the VA properly conducted a search with respect to one of its custodians, and (2) whether the VA and ED properly withheld certain information pursuant to Exemptions 5 and 6. As explained in this brief and the materials submitted herewith, the VA searched all locations likely to contain the records requested of the VA's custodian and both Defendants' applied targeted redactions that fall squarely within FOIA exemptions. Summary judgment is appropriate.

## BACKGROUND

Almeda is a centenarian veteran who served during World War II as a guerrilla against the Japanese occupation of the Philippines. Compl. ¶ 2. During the war, many Filipino guerillas served under the control of the United States Armed Forces, but some ultimately received fewer veterans benefits than others, and those benefits were sometimes reduced. American Recovery and Reinvestment Act of 2009, Pub. L. No. 111-5, § 1002, 123 Stat. 115, 200 (2009).  In 2009, Congress created the Filipino Veterans Equity Compensation Fund to provide additional compensation to Filipino veterans. The Fund allows the Secretary of Veterans Affairs to make a one-time payment of $9,000 to United States citizens and of $15,000 to non-United States citizens who, before July 1, 1946, served in the organized military forces of the Philippines, including "organized guerrilla forces under commands appointed, designated, or subsequently recognized

by the Commander in Chief, Southwest Pacific Area, or other competent authority in the Army of the United States." *Id.* § 1002(d)(1), 123 Stat. at 201.

In 2012, to address the concerns of Filipino veterans "who [had] been impeded from filing claims or believe[d] their claims were improperly denied," the White House Initiative on Asian Americans and Pacific Islanders[2] in collaboration with the Office of Management and Budget established an Interagency Working Group comprised of officials from the VA, the Department of Defense, and the National Archives and Record Administration. The Interagency Working Group would "analyze[] the process faced by these Filipino veterans in demonstrating eligibility for compensation in order to ensure that all applications receive thorough and fair review."[3] The Interagency Working Group concluded its charge in July 2013 with the release of reports intended to "provide the transparency needed to understand the service verification process for Filipino World War II veterans appealing their claims."[4]

Almeda sought payment from the Fund and, while his claim was pending, submitted FOIA requests to the VA and ED that might help his case. As relevant here, among the records sought by Almeda were documents in the possession of VA attorney Richard Hipolit in the Office of

---

[2] The White House Initiative on Asian American and Pacific Islanders was established in October 2009 with the goal of "improve[ing] the quality of life of [Asian Americans and Pacific Islanders] through increased participation in Federal programs in which [Asian Americans and Pacific Islanders] may be underserved." The Initiative is co-chaired by the Secretary of Commerce and the Secretary of Education. Exec. Order 13515 § 3(a), 74 Fed. Reg. 53636 (Oct. 19, 2009). The Department of Eduction provides funding and administrative support for the Initiative. § 3(c) Page 53637.

[3] https://obamawhitehouse.archives.gov/blog/2012/10/17/honoring-filipino-world-war-ii-veterans-their-service

[4] https://obamawhitehouse.archives.gov/blog/2013/07/09/recognizing-extraordinary-contribution-filipino-veterans

General Counsel. Specifically, Almeda requested from Hipolit's files records relating to the following:

> (a) communications—including but not limited to substantive comments, concerns, and/or edits to drafts and/or approvals on agency letterhead (e.g., by VA)—with respect to the preparation of a blog post by the FVEC IWG that ultimately was placed online on or about July 9, 2013 at http://www.whitehouse.gov/blog/2013/07/09/recognizing-extraordinary-contribution-filipino-veterans (now available at https://obamawhitehouse.archives.gov/blog/2013/07/09/recognizing-extra ordinarycontribution- filipino-veterans), as referenced for example in [an attached exhibit] (email chain from 06/13/2013-07/09/2013 re Filipino Vets Blog Post and Report (yellow highlighting added);
>
> (b) any sampling or pilot group of denied FVEC claimants (including but not limited to Celestino G. Almeda), considered by WHIAAPI and/or the FVEC IWG (including but not limited to VA) during 2012-13;
>
> (c) the meeting between VA Secretary Shinseki and WHIAAPI on or about May 10, 2013 concerning FVEC;
>
> (d) the names of all individuals who participated on the FVEC IWG on behalf of VA; and
>
> (e) communications from 2012–13 that in any way reference, refer to, or relate to the report U.S. Army Recognition Program of Philippine Guerrillas, dated circa 1949.

SUMF ¶ 2. Almeda's FOIA request to OGC further stated:

> It is believed that the most relevant time frame of requested Records is 2012–13.
>
> It is believed that the email accounts of the following document custodian[] at VA likely contain relevant information:
>
> • Richard Hipolit (SES) (Richard.Hipolit@va.gov) – he was an individual who participated on the FVEC IWG on behalf of VA and is believed to have been Assistant General Counsel, Professional Staff Group II, Office of the General Counsel at the time.

SUMF ¶ 3.

Though Almeda ultimately resolved his claim with the VA and received a payment from the Fund, he nevertheless chose to pursue his FOIA request in an effort to assist some unidentified other Filipino veterans seeking the same payment. Compl. ¶ 3.

Both the VA and ED have released records to Almeda over the course of this lawsuit and the parties have continuously conferred about the nature of Defendants' searches and the bases for their withholding of responsive records. They parties have been able to resolve many of their disputes but were regrettably unable to eliminate them all. Defendants therefore move for summary judgment.

## STANDARD

Summary judgment is appropriate when the pleadings and evidence "show[] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). It is up to the party moving for summary judgment to demonstrate the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323. A genuine issue is one that "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. Once the moving party has met its burden, the nonmoving party "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Id.*

"[T]he vast majority of FOIA cases can be resolved on summary judgment." *Brayton v. Office of U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011); *see also Media Research Ctr. v. U.S. Dep't of Justice*, 818 F. Supp. 2d 131, 136 (D.D.C. 2011) ("FOIA cases typically and appropriately are decided on motions for summary judgment.") (quoting *Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009)). A government agency may obtain

summary judgment in a FOIA case by relying on "relatively detailed" and "nonconclusory" declarations. *McGehee v. C.I.A.*, 697 F.2d 1095, 1102 (D.C. Cir. 1983). "[T]he Court may award summary judgment solely on the basis of information provided by the department or agency in declarations when the declarations describe 'the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'" *Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Labor*, 478 F. Supp. 2d 77, 80 (D.D.C. 2007) (quoting *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981)). "[A]n agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Media Research Ctr.*, 818 F. Supp. 2d at 137 (quoting *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009)). Courts give agency declarations "a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *SafeCard Servs., Inc. v. S.E.C.*, 926 F.2d 1197, 1201 (D.C. Cir. 1991) (quoting *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981)).

Once the court determines that an agency has released all non-exempt material, it has no further judicial function to perform under FOIA and the FOIA claim is moot. *See Perry v. Block*, 684 F.2d 121, 125 (D.C. Cir. 1982).

## ARGUMENT

The parties have engaged in discussions and have limited the issues necessary for the Court to resolve on summary judgment. With respect to the VA, Almeda challenges:

> whether VA actually has maintained (and thus searched)—in accordance with the FOIA statute—its records from Mr. Hipolit that would be responsive to Plaintiff's FOIA request, the scope of the search only with respect to the custodian Mr. Hipolit, and all

> redactions/withholdings (in part or in full) in the 678 pages of
> records released to Plaintiff on March 4, 2019 (also including all
> email attachments related to those pages if not otherwise released),
> except to the extent that VA redacted/withheld a military email
> address, or privacy-protected information of an individual not
> working for the federal government, from disclosure pursuant to
> Exemption 6.

*See* Jt. Status Rep. ¶ 6, ECF NO. 27. With respect to ED, Almeda challenges:

> all of Ed's remaining redactions/withholdings (in part or in full) in
> the following 43 Bates ranges (also including all email attachments
> related to those pages if not otherwise released), except to the extent
> that Ed redacted/withheld a military email address, or privacy-
> protected information of an individual not working for the federal
> government, from disclosure pursuant to Exemption 6: 0741-44;
> 0745-46; 0749-51; 0888-91; 0911-14; 1064-84; 1090-1101;
> 1276 77; 1183-85; 0446-49; 0493-96; 0607-08; 0958-59; 0978-79;
> 1132-35; 1139-40; 1273-75; 1298-1300; 1301-03; 1310-13;
> 1318 20; 1321-23; 1340-42; 1422-23; 1458-59; 1467; 1469-73;
> 1511; 1513; 1515; 1516-17; 1521-22; 1523-26; 1532-33; 1553-54;
> 1555-56; 1557-61; 1565-67; 1568-70; 1576-77; 1578-79; 1589-95;
> and 1621-23.

*Id.* ¶ 5.

As explained below, the VA conducted an adequate search for Hipolit's records and the agencies withheld only information that is properly exempt under FOIA.

## I.   The VA Conducted an Appropriate Search for Hipolit's Records.

As explained in the declarations of Mildred Baxter and Mark Hutchins, which have already been filed with this Court, *see* ECF Nos. 21-1 & 21-2, and in the declaration of Mike Davis filed herewith, the VA has conducted an adequate search of Hipolit's files for records responsive to Almeda's request. Almeda sought records from Hipolit's email account from the time period 2012 to 2013. SUMF ¶ 3.

The VA's systems automatically and regularly scan the email accounts of users in the Central Office (like Hipolit) for emails that are older than 90 days or with attachments at are larger than 5 megabytes. SUMF ¶¶ 7–8. These emails are automatically archived on central storage

devices. SUMF ¶ 7.[5] At the request of a FOIA officer, the VA's eDiscovery team pulled from these archives all of Hipolit's emails from January 1, 2012, to December 31, 2013. SUMF ¶¶ 9, 15. Some of the emails pulled were encrypted, so the VA decrypted them for review. SUMF ¶¶ 13–14. These emails were searched using keywords developed in coordination with counsel for Almeda. SUMF ¶¶ 15–17.

The VA made some releases of these records to Almeda, SUMF ¶¶ 17, 19; but in February 2019, due to Almeda's continuing disputes about the VA's efforts, an attorney for the VA conducted a de novo review of all the Hipolit records pulled by the VA's eDiscovery team that hit on any of the search terms. SUMF ¶ 20. Using a very liberal standard for responsiveness, the attorney identified 133 documents for release to Almeda. SUMF ¶¶ 21–22.

In sum, the VA searched all locations likely to contain responsive records and it is entitled to summary judgment on the adequacy of its search.

## II.    The VA and ED Withheld Only Exempt Information.

Almeda challenges all of the withholdings by the VA in its March 4, 2019, release and certain withholdings by ED, except for any redactions by either agency of "a military email address, or privacy-protected information of an individual not working for the federal government." *See* Jt. Status Rep. ¶¶ 5–6. The VA and ED both withheld material under Exemptions 5 and 6.

### A.    The Agencies Properly Withheld Information under Exemption 5.

Exemption 5 protects "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C.

---

[5] The VA also asked Hipolit if he had any responsive emails from the time period saved locally on his computer. He did not. SUMF ¶¶ 11–12.

§ 552(b)(5). This exemption shields documents that would be privileged in the context of civil discovery, including materials protected by the attorney-client privilege, the attorney work-product doctrine, and the deliberative-process privilege. *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975). Invoking Exemption 5, the VA withheld information under the deliberative-process privilege, the attorney-client privilege, and the work-product privilege, and ED withheld information under the deliberative-process privilege.

1.     *The Deliberative Process Privilege*

"The deliberative process privilege protects 'documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.'" *Loving v. Dep't of Defense*, 550 F.3d 32, 38 (D.C. Cir. 2008) (quoting *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001)). The privilege applies to records that are both "predecisional" and "deliberative." *Mapother v. Dep't of Justice*, 3 F.3d 1533, 1537 (D.C. Cir. 1993). As used in the context of the privilege, "predecisional" material is that "generated before the adoption of agency policy." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980). Material is "deliberative" if it "reflects the give-and-take of the consultative process." *Id.* The privilege "covers recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." *Id.*

"The deliberative process privilege rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news," and the privilege's "object is to enhance 'the quality of agency decisions,' by protecting open and frank discussion among those who make them within the Government." *Klamath Water*, 532 U.S. at 8–9 (citations omitted); *see also Tax Analysts v. IRS*, 117 F.3d 607,

617 (D.C. Cir. 1997) ("[T]he deliberative process privilege . . . reflect[s] the legislative judgment that 'the quality of administrative decisionmaking would be seriously undermined if agencies were forced to operate in a fishbowl because the full and frank exchange of ideas on legal or policy matters would be impossible.'") (quoting *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 256 (D.C. Cir. 1977) (internal quotation marks omitted)).

As shown on the *Vaughn* indexes of the VA and ED, the agencies properly invoked the deliberative-process privilege to withhold exempt material. *See* Davis Decl. Ex. 1; Siegelbaum Decl. Ex 12. For example, ED withheld portions of an email "in which Department employees debated the content, framing and timing of an upcoming blog post regarding a WHIAAPI blog post released on or about July 9, 2013, and circulated and discussed draft versions of the blog posts." Siegelbaum Decl. ¶ 16. The redacted information is deliberative because it contains internal deliberations and opinions regarding the topics and phrasing of the blog post, along with ED's strategy regarding the timing of the post. Release of this information would compromise the deliberative process by revealing information that ED ultimately did not include in the final version of the post, and could result in confusion to the public by disclosing alternative versions of the blog posts that were ultimately not approved for release by ED. The VA similarly withheld several draft blog posts and candid internal discussions about draft blog posts. *See* Davis Decl. Ex. 1. These items are properly withheld as deliberative. *See Coastal States*, 617 F.2d at 866 (noting that the deliberative-process privilege "covers recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency").

2.     *The Attorney-Client Privilege*

The attorney-client privilege protects confidential communications from clients to their attorneys made for the purpose of securing legal advice or services, and "is not limited to communications made in the context of litigation or even a specific dispute." *Coastal States Gas Corp. v. U.S. Dep't of Energy*, 617 F.2d 854, 862 (D.C. Cir. 1980). The privilege also protects communications from attorneys to their clients that "'rest on confidential information obtained from the client.'" *Tax Analysts v. IRS*, 117 F.3d 607, 618 (D.C. Cir. 1997) (quoting *In re Sealed Case*, 737 F.2d 94, 99 (D.C. Cir. 1984)); *see also Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 254 (D.C. Cir. 1977). In the FOIA context, the agency is the "client" and the agency's lawyers are the "attorneys" for the purposes of attorney-client privilege. *See In re Lindsey*, 148 F.3d 1100, 1105 (D.C. Cir. 1998) (citing *Coastal States*, 617 F.2d at 863).

The VA properly withheld information subject to the privilege. *See* Davis Decl. Ex. 1. As noted on the VA's *Vaughn* index, these withholdings include internal emails between Office of General Counsel attorneys discussing the benefits and risks of certain decisions, legal advice provided to senior VA leaders, and a request for legal advice from a VA employee. *See id.* at 1–2. Indeed, it should come as no surprise to Almeda that there are substantial amounts of privileged material in Hipolit's emails because, as Alemda knows, Hipolit is served as Assistant General Counsel during the time period in question. SUMF ¶ 3.

3.     *The Work-Product Doctrine*

The attorney work-product privilege applies to materials prepared in anticipation of litigation. *See Tax Analysts*, 117 F. 3d at 620. The privilege is "relatively broad and encompasses documents prepared for litigation that is 'foreseeable,' if not necessarily imminent." *Am. Immigration Council v. Dep't of Homeland Sec.*, 21 F. Supp. 3d 60, 78 (D.D.C. 2014). Courts have

recognized that this privilege may shield the entire document prepared in anticipation of litigation, not just the portions containing opinions and legal theories. *Tax Analysts I*, 117 F.3d at 620. Thus, agencies do not have an obligation to segregate and release factual material when withholding information under Exemption 5 based on the attorney work product doctrine. *Judicial Watch, Inc. v. DOJ*, 432 F.3d 366, 372 (D.C. Cir. 2005) (holding that "because the emails at issue in the case are attorney work product, the entire contents of the documents—i.e., facts, law, opinions, and analysis—are exempt from disclosure under FOIA"); *see also Am. Immigration Council v. Dept. of Homeland Sec.*, 21 F. Supp. 3d at 78–79 (finding that ICE properly withheld handwritten notes written by ICE attorney that discussed details of specific cases involving non-citizens).

As explained in the VA's *Vaughn* index, the materials withheld under this privilege contain such information as a discussion about active litigation between attorneys in the agency's Office of General Counsel, a discussion of the strength of legal arguments in a litigation brief, and summaries of significant litigations. Davis Decl. Ex. 1 at 1, 3, 7. This information was presented in the context of ongoing litigation and is properly withheld under the work-product doctrine.

   B.      The Agencies Properly Withheld Information under Exemption 6.

Exemption 6 serves to protect personal privacy, permitting an agency to withhold "personnel and medical files and similar files the disclosure of which would clearly constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). The catchall provision "similar files" includes any "[g]overnment records on an individual which can be identified as applying to that individual." *U.S. Dep't of State v. Washington Post Co.*, 456 U.S. 595, 602 (1982); *see also Lepelletier v. Fed. Deposit Ins. Corp.*, 164 F.3d 37, 47 (D.C. Cir. 1999) ("The Supreme Court has interpreted the phrase 'similar files' to include all information that applies to a particular individual.").

The D.C. Circuit has explained that courts "follow a two-step process when considering withholdings or redactions under Exemption 6." *Am. Immigration Lawyers Ass'n v. Exec. Office for Immigration Review* ("*AILA*"), 830 F.3d 667, 673 (D.C. Cir. 2016). Once the records at issue are determined to be "similar files," 5 U.S.C. § 552(b)(6), courts must take a second step "by considering the significance of the privacy interest at stake," *U.S. Dep't of State v. Ray*, 502 U.S. 164, 175 (1991). This, in turn, requires "another two-step process" to determine first whether "'disclosure would compromise a substantial, as opposed to a *de minimis*, privacy interest,'" *AILA*, 830 F.3d at 673–74 (quoting *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 33 (D.C. Cir. 2002)). "If no significant privacy interest is implicated . . . FOIA demands disclosure." *Nat'l Ass'n of Retired Fed. Employees v. Horner*, 879 F.2d 873, 874 (D.C. Cir. 1989). If a substantial privacy interest does exist, such finding "does not conclude the inquiry; it only moves it along to the point where we can 'address the question whether the public interest in disclosure outweighs the individual privacy concerns.'" *Multi Ag Media LLC v. Dep't of Agric.*, 515 F.3d 1224, 1230 (D.C. Cir. 2008) (quoting *Norton*, 309 F.3d at 35); *Am. Immigration Lawyers Ass'n*, 830 F.3d at 674 (explaining that the second step is to "weigh the privacy interest at stake 'against the public interest in the release of the records'" (quoting *Norton*, 309 F.3d at 33) ).

Congress did not intend the FOIA to facilitate "disclosure of information about private citizens that is accumulated in various governmental files but that reveals little or nothing about an agency's own conduct." *DOJ v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 772–73 (1989) (quotations omitted). Thus, "unless a FOIA request advances 'the citizens' right to be informed about what their government is up to,' no relevant public interest is at issue." *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 34 (D.C. Cir. 2002) (quoting *Reporters Comm.*, 489 U.S. at 773). In the absence of any identified public interest of the sort the FOIA was intended to serve,

12

the exemption must be upheld. *Consumers' Checkbook Ctr. for the Study of Servs. v. HHS*, 554 F.3d 1046, 1056 (D.C. Cir. 2009) ("[W]e need not balance the non-existent public interest against every physician's substantial privacy interest in the Medicare payments he receives.").

Here the VA withheld only the names of nonsenior VA employees, *see* Davis Decl. Ex. 1, and ED withheld only the destination of an employee's personal vacation to visit his family, Siegelbaum Decl. ¶ 19. Nonsenior government employees have a substantial privacy interest in preventing their identities from being disclosed to the public, and this interest is not outweigh by the public interest because releasing the public information of lower-level VA employees does not significantly contribute to public understanding of the activities of government. *See Roseberry-Andrews v. Dep't of Homeland Sec.*, 299 F. Supp. 3d 9, 30 (D.D.C. 2018). Simlarly, employees have a privacy interest in the personal vacation plans of their families and that information would not shed any light on government operations. Both agencies therefore properly withheld information under Exemption 6.

## III.   Defendants Released All Reasonably Segregable Information.

If a responsive record contains information exempt from disclosure, any "reasonably segregable" nonexempt information must be disclosed. 5 U.S.C. § 552(b). Nonexempt portions of records need not be disclosed, however, if they are "inextricably intertwined with exempt portions." *Mead Data Cent., Inc. v. Dep't of the Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977). To establish that all reasonably segregable, nonexempt information has been disclosed, an agency need only show "with 'reasonable specificity'" that the information it has withheld cannot be further segregated. *Armstrong v. Exec. Office of the President*, 97 F.3d 575, 578-79 (D.C. Cir. 1996); *Canning v. Dep't of Justice*, 567 F. Supp. 2d 104, 110 (D.D.C. 2008). "Agencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable

material," which must be overcome by some "quantum of evidence" by the requester. *Sussman v.*
*U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007). As explained in the declarations
submitted by the VA and ED, the agencies properly released all reasonably segregable information.
SUMF ¶¶ 23–24.

## CONCLUSION

For the foregoing reasons, Defendants should be granted summary judgment.

Dated: June 26, 2019                            Respectfully submitted,

                                                JESSIE K. LIU, D.C. Bar #472845
                                                United States Attorney

                                                DANIEL F. VAN HORN, D.C. Bar #924092
                                                Chief, Civil Division

                                                By:   /s/ Johnny Walker
                                                JOHNNY H. WALKER, D.C. Bar #991325
                                                Assistant United States Attorney
                                                555 4th Street, N.W.
                                                Washington, District of Columbia 20530
                                                Telephone: 202 252 2575
                                                Email: johnny.walker@usdoj.gov

                                                *Counsel for Defendants*